GINGER HOLLADAY, Plaintiff-Appellee, v. BRUCE BOYD, Defendant-Appellant.

First District (3rd Division)   No. 1—95—2896

Opinion filed December 30, 1996.—Rehearing denied February 5, 1997.

Rooks, Pitts & Poust, of Chicago (Terrence J. Madden and Jerome N. Groark, of counsel), for appellant.

William J. Harte, Ltd., and Offices of James T. Keating, both of Chicago (William J. Harte, Elizabeth Davis-Keating, and Joan M. Mannix, of counsel), for appellee.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff filed a complaint against defendant, a psychiatrist, in June 1990, alleging medical malpractice and negligent infliction of emotional distress. After trial, a jury returned a $1,450,000 verdict for plaintiff.

Defendant argues on appeal that the trial court erred in denying a motion for a directed verdict based upon the two-year statute of limitations for medical malpractice. We reverse, finding the complaint timed-barred, and do not address the remaining arguments by defendant.

The plaintiff testified at trial, in her case in chief, that after graduating high school, she sang professionally in Memphis, Tennessee, and studied sociology and music at Memphis State University. She married in 1971 and divorced in 1975. She then studied music at Peabody College in Nashville.

Plaintiff married her second husband in 1978 and moved to Chicago. She continued to work as a singer in the advertising business, but grew anxious about her career. She and her husband were also having marital problems, and plaintiff decided to seek professional help. Her first therapy session with defendant, a licensed psychiatrist, was in 1981. She continued treatment of two or three sessions a week through 1986. During this time she divorced her second husband.

Plaintiff testified that in 1984 or 1985 defendant pulled her onto his lap during a therapy session. When asked by counsel what happened after he pulled her onto his lap, plaintiff stated: "I told him I wasn't five years old anymore. I got back in my chair. He said I'm glad you realize that." In later sessions they sat on the floor. She sat

between defendant's legs, and sometimes they kissed. She then testified about a specific incident with defendant:

"I took my sweater off and I had like a camisole or something on and he began kissing my neck. And I remember thinking, God, I've been fantasizing for this, you know. I've been fantasizing about this for years. It's finally happening but I don't like it. And I didn't know—I didn't know how to stop it."

Plaintiff testified she had sexual intercourse with defendant during a therapy session at his office in May 1986. Plaintiff then asked defendant: "Does this mean you cannot be my therapist anymore?" Defendant replied he could still be her therapist. They had sexual intercourse five or six times at later sessions in 1986, but not at every session.

After sex with defendant plaintiff experienced nervousness and agitation. She would leave his office and walk down 12 flights of stairs. She also fantasized about punching her arms through windows and could not go straight home, but walked the streets. She felt guilty after sex with defendant because she had a boyfriend.

Plaintiff said that in the summer of 1986 her performance anxiety as a singer had not improved. She was creatively blocked, agitated, and had lost much of her confidence, so she attended a three-week workshop in Kauai, Hawaii. She then attended a nine-month workshop in California in October 1986.

Counsel asked plaintiff why she went to this workshop. She stated: "At the time I felt desperate. And I thought something was wrong with me. *** I was confused. I still thought that there was something wrong with me, that [defendant] couldn't help me, but maybe somebody else could."

Plaintiff returned to Chicago in the summer of 1987 and visited defendant at his office three times. They had sexual intercourse. Plaintiff did not pay for these visits. She told defendant she wanted to take their relationship out of the office, but he did not give her an answer. When counsel asked what she did after that, she said: "I cried. I cried and I cried. And then I have to say, it was one of the first times that I cried in his office. After five years of therapy, I finally cried."

Plaintiff moved to California in the summer of 1987. A friend, Barbara Belanyi, picked her up at the airport. She told Belanyi of her sexual relationship with defendant. Belanyi told her the relationship was inappropriate and that she should find another therapist. Plaintiff then sent defendant a letter stating she would not see him again and the therapy was over. Plaintiff said Belanyi had a degree in psychology and she respected Belanyi's opinion. Plaintiff then

began therapy with Charles Dillon. She told him in 1987 of her relationship with defendant. When counsel asked what Dillon said, plaintiff stated: "He said something like we both must have gotten in trouble." She told no one other than Dillon and Belanyi that she had sex with defendant because, she said, "I think I was ashamed of it. *** I was embarrassed that I had a relationship—a sexual relationship with my therapist."

Plaintiff talked with defendant by telephone until the spring of 1990. She filed this complaint on June 29, 1990. She stated she has anxiety attacks, nightmares, inability to sleep, problems with concentration, feelings of guilt and shame, low self-confidence and self-esteem, and uncontrolled emotions.

Belanyi testified by evidence deposition. She met plaintiff in the summer of 1986, and they became friends. They attended a workshop in Kauai in July 1986. Plaintiff then seemed upset, agitated, anxious, nervous, and under stress. Belanyi also attended the nine-month workshop with plaintiff in California in 1986. She and plaintiff were good friends and saw each other daily. Plaintiff was nervous, anxious, and under stress. When plaintiff returned to California from Chicago in the summer of 1987, Belanyi described her as "flipped out." Belanyi testified: "[Plaintiff] was very upset, and after some questioning, she finally relayed that her relationship with Dr. Boyd was more than she had insinuated." When plaintiff told Belanyi about her sexual relationship with defendant, Belanyi encouraged her to "break off" the relationship and told her it was "totally inappropriate" and that she needed to see another therapist "immediately." She also "encouraged her to sever any further conversations with Dr. Boyd." They often spoke about the relationship and remained close friends.

Edison DeMello, plaintiff's treating therapist in 1989, testified that plaintiff suffered from post-traumatic stress syndrome and depression.

Ann Thompson, plaintiff's treating therapist in 1991, testified by evidence deposition that plaintiff was suffering from post-traumatic stress disorder and panic disorder without agoraphobia caused by sexual contact with a former therapist.

Two experts who interviewed plaintiff and reviewed her records also testified. Dr. Strasburger, a psychiatrist, said that plaintiff was extremely confused as a result of the sexual relationship with defendant. Dr. Burstein, a psychologist, said that in his opinion plaintiff suffered from post-traumatic stress disorder as a result of the sexual contact with defendant.

At the close plaintiff's case in chief, defendant moved for a directed verdict. He argued that the complaint was time-barred

because plaintiff knew or reasonably should have known that defendant's sexual contacts were inappropriate and that she had been injured by those contacts more than two years before she filed the action on June 29, 1990.

The court denied the motion, stating only: "I will just tell the jury there is no issue—when the complaint was filed, just decide the liability or non-liability."

Defendant argues on appeal that the court erred when it denied the motion for a directed verdict because the evidence shows as a matter of law that the complaint was time-barred under the two-year statute of limitations applicable to actions against physicians.

■ A verdict should be directed when all the evidence, viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). A directed verdict is improper where "there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508 (1992). In ruling on a motion for a directed verdict, the trial court can neither weigh the evidence nor judge the credibility of witnesses. *Maple*, 151 Ill. 2d at 453.

■ Plaintiff first argues that defendant waived the statute of limitations defense because he failed to plead it as an affirmative defense. She cites *Goldman v. Walco Tool & Engineering Co.*, 243 Ill. App. 3d 981, 614 N.E.2d 42 (1993), in support of her argument. The *Goldman* court noted that the statute of limitations is an affirmative defense that is waived if not pled.

Section 2—613(d) of the Code of Civil Procedure (735 ILCS 5/2—613(d) (West 1994)) provides:

> "The facts constituting any affirmative defense *** and any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply." 735 ILCS 5/2—613(d) (West 1994).

Section 2—613 is designed to prevent unfair surprise at trial. *Cross v. Ainsworth Seed Co.*, 199 Ill. App. 3d 910, 918, 557 N.E.2d 906 (1990). This court has held that a defendant does not waive the statute of limitations, even though not pled as an affirmative defense in an answer, where it is raised in a motion for summary judgment. *Rognant v. Palacios*, 224 Ill. App. 3d 418, 586 N.E.2d 686 (1991). The court in *Rognant* held that failure to plead an affirmative defense in

the answer is not necessarily a waiver under section 2—613(d). *Rognant*, 224 Ill. App. 3d at 422. The court found no waiver where the plaintiff had adequate time to respond to defendant's assertion of the statute of limitations raised in a motion for summary judgment.

■ The defendant in *Goldman* raised the statute of limitations for the first time in a post-trial motion. Defendant in this case first raised the issue in a motion to dismiss the complaint. After the motion was denied, the parties conducted discovery, and defendant again raised the issue in a motion *in limine*. Defendant moved to bar introduction of evidence of the relationship between plaintiff and defendant after their last sexual contact in the summer of 1987. The court reserved ruling on that motion. The trial judge stated he would treat it as a motion for a directed verdict at the close of plaintiff's case. Defendant then filed a motion for a directed verdict, based on the statute of limitations. Plaintiff filed a response to the motion.

Based on the motion to dismiss the complaint, the motion *in limine,* and the motion for a directed verdict, plaintiff cannot claim she was surprised by the statute of limitations defense. We believe defendant preserved the issue. See *Rognant*, 224 Ill. App. 3d at 422; see also *Neaterour v. Holt*, 188 Ill. App. 3d 741, 749, 544 N.E.2d 846 (1989).

■ The limitations period for plaintiff's action is governed by section 13—212 of the Code of Civil Procedure, which reads: "[N]o action for damages for injury or death against any physician *** shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, *** of the existence of the injury or death for which damages are sought ***." 735 ILCS 5/13—212 (West 1992).

The statute incorporates the "discovery rule," which postpones the start of the limitations period until the injured party knows or should have known of his injury and that it was wrongfully caused. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414, 430 N.E.2d 976 (1981). In *Witherell v. Weimer*, 85 Ill. 2d 146, 421 N.E.2d 860 (1981), our supreme court explained that under the discovery rule the statue of limitations in malpractice actions begins to run "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell*, 85 Ill. 2d at 156.

If there is a disputed question of fact about when an injured party knows or reasonably should have known of his injury and that it was wrongfully caused, it is to be resolved by the finder of fact. *Lipsey v. Michael Reese Hospital*, 46 Ill. 2d 32, 262 N.E.2d 450 (1970). Where only one conclusion can be drawn from the undisputed facts,

the question becomes one for the court. *Witherell v. Weimer*, 85 Ill. 2d at 156.

Plaintiff argues that defendant was not entitled to a directed verdict based on the statute of limitations because the issue of whether plaintiff knew or reasonably should have known of her injury and that it was wrongfully caused was a question of fact for the jury. Defendant relies on three cases to rebut plaintiff's contention.

In the first case, *Hertel v. Sullivan*, 261 Ill. App. 3d 156, 633 N.E.2d 36 (1991), the plaintiff alleged she was sexually abused as an adult from 1983 to 1988 by a priest. Although she did not allege her memory was suppressed, she maintained she did not discover the defendant's acts were wrongful until consulting a therapist in 1991. She also alleged she was not fully aware of the extent of her injury until 1992, when she was emotionally capable of taking action to protect herself. But, the evidence showed that plaintiff suffered depression in 1985 and believed it was connected with the sexual incidents. She also complained to the defendant's supervisor in 1986 that she had sustained physical injuries related to the defendant's treatment of her. The court held the action was time-barred because it was not filed within two years after the plaintiff knew or should have known of the injury and whether it was wrongfully caused.

In the second case, *Franke v. Geyer*, 209 Ill. App. 3d 1009, 568 N.E.2d 931 (1991), the court also refused to extend the statute of limitations period. The plaintiff alleged she knew as a child that she had been abused, but she was not aware of the connection between her psychological problems and the abuse until she was 29 years old. She alleged that because of the abuse she was "in constant dread and apprehension that such acts were about to occur" and her psychological symptoms began "from the time the abuse started to the present." 209 Ill. App. 3d at 1012. The court held as a matter of law that the plaintiff knew or should have known the defendant's conduct was actionable when she was 18 years old. The court concluded that even though the plaintiff may not have discovered the full extent of her injuries until some 13 or 14 years later, when she reached majority, she "had sufficient information concerning her injury and its cause to put her on inquiry as to whether actionable conduct was involved." *Franke*, 209 Ill. App. 3d at 1012.

In the third case cited by defendant, *Hawley v. Kenley*, 261 Ill. App. 3d 307, 634 N.E.2d 20 (1994), the plaintiff alleged her grandfather sexually abused her when she was 16 years old and she did not remember the abuse until she was 24 years old. But, she stated in a deposition that she "had a general recollection of being abused by

her stepgrandfather dating from the time of the abuse." The court held that the plaintiff's cause of action was time-barred because she "had knowledge of, or through the use of reasonable diligence should have discovered, the alleged childhood sexual abuse and the injury resulting from that abuse years before she filed her complaint. *** At the very least, this knowledge, even if only general, placed the plaintiff 'under an obligation to inquire further to determine whether an actionable wrong was committed.' " *Hawley*, 261 Ill. App. 3d at 311-12, quoting *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171, 421 N.E.2d 864 (1981).

Plaintiff argues that these cases "establish only that where there is no doubt that the plaintiff knew the sexual contact was wrongful and was also aware of injury resulting from the sexual contact, the statute of limitations was triggered." Nowhere in these cases can such an interpretation be found, nor is it a proper statement of the law. The use of the term "wrongfully caused" "does not connote knowledge of negligent conduct or knowledge of the existence of a cause of action." *Knox College*, 88 Ill. 2d at 416. The knowledge need not be actual or certain so long as "[a]t some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences." *Knox College*, 88 Ill. 2d at 416.

■ Plaintiff argues her trial testimony shows she did not "understand that she had been abused by defendant and that the therapy had been inappropriate" until her treatment with Dr. De-Mello in 1989. We disagree with this summary of plaintiff's testimony and note that there is no requirement that a plaintiff must discover the full extent or the consequences of her injuries before the statute of limitations begins to run. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 657 N.E.2d 894 (1995).

Plaintiff admitted she experienced "extreme" nervousness, agitation, and guilt after the sexual contacts with defendant. She left Chicago in 1986 to attend two workshops because she was "confused," "desperate," and "agitated." She had lost her confidence. She believed something was wrong with her, that defendant could not help her.

■ When plaintiff told her friend Belanyi about the relationship in 1987, Belanyi informed her it was "totally inappropriate" and she needed to find another therapist. Belanyi encouraged her to sever the relationship with defendant. Plaintiff testified that she respected Belanyi's opinion and that Belanyi had a degree in psychology. The only response plaintiff offers to defendant's argument that this evi-

dence clearly shows plaintiff knew or should have known of her injury and that it was wrongfully caused by the time she spoke with Belanyi is "that Belanyi had never practiced psychology and was not licensed." We find the response unpersuasive regarding plaintiff's state of mind. Our summary of Illinois law shows that information need not come from an expert to be sufficient to put a plaintiff on notice that an injury is "wrongfully caused," even if the injury is psychological.

The evidence shows that plaintiff followed Belanyi's advice. After Belanyi told plaintiff the relationship was inappropriate and to find another therapist, plaintiff wrote to defendant that she was discontinuing therapy with him. She then started therapy with Charles Dillon. She also told Dillon about the relationship, and he commented that she and defendant must have both gotten in trouble.

■ Plaintiff fails to show a factual dispute. Most of the evidence that supports a conclusion that plaintiff had enough information concerning her injury and its cause to put her on inquiry about the possibility of actionable conduct comes from the uncontested testimony of plaintiff about events in 1986 and 1987. There is no allegation of suppressed memory, no testimony defendant told plaintiff the sexual contact was necessary, beneficial, or a part of therapy.

■ But, plaintiff argues "there was a continuous and unbroken course of negligent treatment" through 1990 because plaintiff and defendant talked over the telephone "and that treatment was so related as to constitute one continuing wrong." We are not persuaded by plaintiff's assertion of the continuing negligence doctrine and attempts to analogize this case to *Cunningham v. Huffman,* 154 Ill. 2d 398, 609 N.E.2d 321 (1993). In *Cunningham,* the supreme court held the four-year medical malpractice statute of repose (735 ILCS 5/13—212 (West 1994)) was tolled during the period of an ongoing course of continuous negligent medical treatment. The evidence here offered by plaintiff's treating therapists and experts was that her injury was caused by the sexual contacts with defendant in 1986 and 1987. These contacts ended in July 1987. There was no evidence that plaintiff's injury was caused by therapy rendered by telephone after July 1987. We further note that this court has held the continuing negligence doctrine "tolls the four-year statute of repose but does not toll the two-year statute of limitations if plaintiff knows of her injury." *Johnson v. Core-Vent Corp.,* 264 Ill. App. 3d 833, 838-39, 636 N.E.2d 726 (1993). See also *Jacobson v. Natonson,* 164 Ill. App. 3d 126, 517 N.E.2d 304 (1987), where the court stated:

> "Under that doctrine, the four-year repose provision of the statute would be tolled during a continuous course of treatment for a

specific condition, and would commence running at the last treatment. At the same time, the two-year limitation period would commence during or after the course of treatment at such time as plaintiff discovered that a wrongful injury had been inflicted on her." *Jacobson*, 164 Ill. App. 3d at 132.

We find the evidence, when viewed in a light most favorable to plaintiff, shows that in July 1987, at the latest, plaintiff was "possessed of sufficient information concerning [her] injury *** to determine whether actionable conduct is involved." See *Knox College*, 88 Ill. 2d at 416. At that time, the burden was on the plaintiff to inquire about the existence of a cause of action and the statute of limitations began to run under the discovery rule. The complaint, filed in June 1990, is barred as a matter of law.

Reversed.

THEIS and O'BRIEN, JJ., concur.