No. 3-04-0398, 3-04-0399 cons.
_____

Filed September 1, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| BRIAN SOFTCHECK, JOHN DOE I, JOHN DOE II and JOHN DOE III, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 02-L-494 |
| JOSEPH L. IMESCH, as Trustee for the Diocese of Joliet Trust, and LAWRENCE MULLINS, | ) ) ) ) | |
| Defendants-Appellees | ) ) ) | Honorable James E. Garrison, Judge, Presiding. |
| (James F. Fonck, | ) ) | |
| Plaintiff-Appellant and Cross-Appellee; | ) ) ) | |
| Michael L. Gibbney, | ) ) | |
| Defendant-Appellee and Cross-Appellant. | ) ) ) | |
| _____) | ) | |
| BRIAN SOFTCHECK, JOHN DOE I, JOHN DOE II and JOHN DOE III, | ) ) | |
| Plaintiffs-Appellants and Cross-Appellees, | ) ) ) | |
| v. | ) | |

```
                                   )
JOSEPH L. IMESCH, as Trustee  )
for the Diocese of Joliet     )
Trust, and LAWRENCE MULLINS,  )
                              )
      Defendants-Appellees    )
      and Cross-Appellants    )
                              )
(James F. Fonck,              )
                              )
      Plaintiff-Appellant and )
      Cross-Appellee).        )
```
_____

PRESIDING JUSTICE SCHMIDT delivered the opinion of the court modified upon rehearing:


Plaintiffs, Brian Softcheck, John Does I, II, and III, and James Fonck, appeal the order of the circuit court of Will County granting motions to dismiss plaintiffs' third amended complaint. Plaintiffs' complaints alleged sexual abuse by defendants Lawrence Mullins and Michael Gibbney, plaintiffs' respective priests. Defendants, Mullins, Gibbney, and Bishop Joseph L. Imesch, as trustee of the Diocese of Joliet Trust (Diocese), filed motions to dismiss based on the alleged expiration of the statute of limitations. Defendants cross-appeal, arguing that amendments to section 13--202.2 of the Code of Civil Procedure (the Code) (735 ILCS 5/13--202.2 (West 2004)), the statute of limitations applicable to childhood sexual abuse cases, effective in 2003, cannot apply retroactively to this case, and, alternatively, that the court's exercise of jurisdiction violated the first amendment to the United States Constitution. For the reasons that follow, we affirm.

                              BACKGROUND

In September 2002, plaintiffs Softcheck and Does I, II, and III filed their first

complaint against defendants Mullins and Imesch alleging Mullins sexually abused them while they were students and altar boys at St. Raymond Nonnatus parish in Joliet. In October 2002, plaintiff Fonck filed suit against defendants Gibbney and the Diocese, alleging Gibbney sexually abused him in 1978 at Mary Queen of Heaven parish in Elmhurst. The cases proceeded in the trial court on identical briefing and hearing schedules and have been consolidated in this court for appeal. Defendants filed motions to dismiss based on the expiration of the statute of limitations. Plaintiffs withdrew their complaints before hearings on the motions and subsequently filed their first amended complaints. The court construed the pending motions to dismiss as directed against the first amended complaints and later granted the motions with leave to file second amended complaints. Plaintiffs did file second amended complaints and defendants again filed motions to dismiss premised on the statute of limitations. In April 2003, the court granted defendants' motions to dismiss as to plaintiffs' second amended complaints, again without prejudice.

Plaintiffs filed a motion to extend time to file their third amended complaints to await the Governor's signature on a bill amending section 13--202.2 of the Code of Civil Procedure (735 ILCS 5/13--202.2 (West 2002)). Plaintiffs filed a motion for leave to file their third amended complaints to invoke section 13--202.2 as amended. In October 2003 plaintiffs filed their third amended complaints. The allegations of plaintiffs' third amended complaints relevant to invoking section 13--202.2 are, in part, as follows (in regard to section 13--202.2, plaintiffs individually made identical allegations):

"[Defendant priests] encouraged and strengthened plaintiff[s'] faith,

trust and reliance upon [defendant priests] by repeatedly assuring

˘3˘

plaintiff[s] that [defendant priests'] directions, instruction and conduct were morally, socially and religiously beneficial and would cause and enable plaintiff[s] to experience optimal mental, moral, emotional and psychological growth and development.  [Defendant priests] further exploited plaintiff[s'] suggestibility be [*sic*] assuring plaintiff[s] that adherence to [defendant priests'] instructions and directions was necessary to plaintiff[s'] proper growth and development, even though doing so might at times seem to conflict with plaintiff[s'] innate but inferior and inadequately informed sense of propriety or rectitude.  [Defendant priests] repeatedly assured and instructed plaintiff[s] that the teachings and instructions of the Church, as given through [defendant priests], were perfect and infallible and superior to imperfect human laws; that adherence to [defendant priests'] teachings and compliance with [their] directions and conduct were in all respects good and beneficial and could cause no harm.

* * *

The conduct alleged in the preceding paragraph [(sexual abuse by defendant priests)] was initiated by [defendant priests] and uninvited by plaintiff[s].  Although the conduct alleged was uninvited, plaintiff[s] did not perceive or sustain any physical injury or damage and lacked sophistication (as more fully alleged hereinafter) to perceive psychological or emotional harm or injury proximately resulting therefrom.

* * *

Plaintiff[s] did not, in fact, begin to perceive the wrongfulness of the conduct of defendant[s] until 2002 when [they] heard of pedophile priest litigation involving other priests and dioceses and began to realize that [their] own experiences may have been victimization possibly having a causal relation to [their] emotional and psychological disturbances."

In November 2003 defendants again filed motions to dismiss arguing that (1) section 13--202.2, as amended, cannot revive a time-barred cause of action, and (2) assuming, *arguendo*, that the amended statute did apply, a reasonably diligent person would have discovered the acts of abuse and their causal relationship to plaintiffs' emotional problems earlier than plaintiffs in this case. Defendant Gibbney also argued that the trial court lacked subject matter jurisdiction because it would be required to examine the teachings and doctrines of the Catholic Church.

In January 2004 the court granted defendants' motions to dismiss plaintiffs' third amended complaints. In February 2004, plaintiff Fonck filed a motion for an extension of time to file a posttrial motion. Fonck attached to his motion a newsletter published by the Diocese containing statistics on allegations of sexual abuse by priests. The court granted Fonck's motion for an extension of time. In March 2004 Fonck filed a motion to reconsider, for vacatur, and for reinstatement. Fonck attached to the motion for reconsideration the newsletter, dated February 2004, issued by the Diocese. That newsletter included a chart showing that nearly one-third (20 of 61) of credible victims of sexual abuse by diocesan priests who had come forward since 2000 involved claims that were at least 20 years old. The court denied the motion to reconsider. This appeal followed.

ANALYSIS

"Whether a cause of action was properly dismissed under section 2--619(a)(5) of the Code of Civil Procedure based on the statute of limitations is a matter we review *de novo.*" *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99, 820 N.E.2d 455, 459 (2004). Plaintiffs allege that the trial court erred in holding that their claims were barred by the statute of limitations. Defendants Gibbney and Imesch, as trustee for the Diocese of Joliet, argue that dismissal of the plaintiffs' claims as untimely was proper, but cross-appeal claiming the trial court employed improper analysis and applied the wrong statute of limitations when arriving at the correct result. Therefore, we must initially determine the proper statute of limitation that applies to plaintiffs' actions and then analyze the allegations within their complaints to decide whether they were timely brought.

A. The Proper Statute of Limitations

The oldest plaintiff reached the age of majority on February 7, 1983. The youngest plaintiff reached the age of majority on March 29, 1987. All of the plaintiffs filed suit in 2002 when they were between the ages of 33 and 37 years old. Until January 1, 1991, the Code did not contain a specific statute of limitations only applicable to or titled "Childhood sexual abuse." When these plaintiffs reached the age of majority, Illinois' general personal injury statute of limitations read as follows:

"Actions for damages for an injury to the person *** shall be commenced within 2 years next after the cause of action accrued ***." Ill. Rev. Stat. 1983, ch. 110, par. 13--202.

Applicable to section 13--202 at the time was section 13--211 which read:

˅6˅

"Minors and persons under legal disability. If the person entitled to bring an action, specified in Sections 13-201 through 13-212 of this Act, at the time the cause of action accrued, is under the age of 18 years, or under legal disability, or imprisoned on a criminal charge, he or she may bring the action within 2 years after the disability is removed." Ill. Rev. Stat. 1983, ch. 110, par. 13--211.

On January 1, 1991, a specific "Childhood sexual abuse" statute of limitations became effective as an amendment to section 13-202, which stated:

"An action for damages for personal injury based on childhood sexual abuse must be commenced within 2 years of the date the person abused discovers or through the use of reasonable diligence should discover that the act of childhood sexual abuse occurred and that the injury was caused by the childhood sexual abuse, but in no event may an action for personal injury based on childhood sexual abuse be commenced more than 12 years after the date on which the person abused attains the age of 18 years." Ill. Rev. Stat. 1991, ch. 110, par. 13--202.2(b).

The 1990 amendments, which became effective in 1991, essentially codified the common law discovery rule. *D.P. v M.J.O.*, 266 Ill. App. 3d 1029, 1032, 640 N.E. 2d 1323 (1994).

Soon thereafter, section 13--202.2(b) of the Code was again amended in 1993. These 1993 amendments, which became effective January 1, 1994, changed the

statute to read as follows:

"(b) An action for damages for personal injury based on childhood sexual abuse must be commenced within 2 years of the date the person abused discovers or through the use of reasonable diligence should discover that the act of childhood sexual abuse occurred and that the injury was caused by the childhood sexual abuse.

***

(d) The limitation periods under subsection (b) do not begin to run before the person abused attains the age of 18 years; and, if at the time the person abused attains the age of 18 years he or she is under other legal disability, the limitation periods under subsection (b) do not begin to run until the removal of the disability." 735 ILCS 5/13--202.2 (b), (d) (West 1994).

Finally, section 13--202.2 of the Code was again amended in 2003. The final amendment to section 13--202.2 became effective July 24, 2003. The 2003 version of the statute reads, in pertinent part, as follows:

"(b) Notwithstanding any other provision of law, an action for damages for personal injury based on childhood sexual abuse must be commenced within 10 years of the date the limitation period begins to run under subsection (d) or within 5 years of the date the person abused discovers or through the use of reasonable diligence should discover both (i) that the act of childhood sexual abuse occurred and (ii) that the injury was caused by the childhood sexual abuse. The fact that the person abused discovers

or through the use of reasonable diligence should discover that the act of childhood sexual abuse occurred is not, by itself, sufficient to start the discovery period under this subsection (b). Knowledge of the abuse does not constitute discovery of the injury or the causal relationship between any later-discovered injury and the abuse." 735 ILCS 5/13--202.2(b) (West 2004).

As previously noted, plaintiffs attempted to invoke the latest amended version of section 13--202.2 of the Code of Civil Procedure (735 ILCS 5/13--202.2(b) (West 2004)). We are called upon to determine which statute of limitations applies to plaintiffs' claims and whether the trial court acted properly in dismissing those claims as untimely.

In *M.E.H. v. L.H.*, the supreme court noted:

"More than a hundred years ago, our court held that that once a statute of limitations has expired, the defendant has a vested right to invoke the bar of the limitations period as a defense to a cause of action. That right cannot be taken away by the legislature without offending the due process protections of our state's constitution. [Citation]." *M.E.H. v. L.H.*, 177 Ill. 2d 207, 214-15, 685 N.E.2d 335, 339 (1997).

Therefore, had an applicable statute of limitations period expired prior to the enactment of the 1990, 1993, or 2003 amendment, any amendments which became effective after

the passing of the limitations period could not revive the plaintiffs' actions. See *Kuch v. Catholic Bishop of Chicago*, No. 1--05--1175 (May 30, 2006).

The trial court found, and we agree, that the pleadings indicate that the plaintiffs were not "under any legal disability or incapacity after they reached maturity at age 18" and that they did not suffer "from some emotional or psychological repression or suppression which affected their memory or ability to discover the wrongful conduct and its potential cause of their emotional distress." The trial court further noted, and again we agree, that the pleadings indicate "the plaintiffs all knew and remembered the abusive conduct in issue from the time it occurred." Therefore, the applicable statute of limitations period is that found in the Illinois Revised Statutes of 1983 quoted above. Pursuant to sections 13--202 and 13--211, the plaintiffs needed to bring this action "within two years *** after the cause of action accrued" (Ill. Rev. Stat. 1983, ch. 110, par. 13--202) or within two years of turning 18 years old  (Ill. Rev. Stat. 1983, ch. 110, par. 13--211). Clearly, they did not bring the action within two years of turning 18 years of age. Therefore, if they do not bring the action within two years of the date on which it "accrued," sections 13--202 and 13--211 serve as a bar that can be asserted by the defendants and, again, no other subsequent amendments can dissolve that bar and revive plaintiffs' claims. *M.E.H.*, 177 Ill. 2d at 214. However, since the discovery rule can delay the accrual of a cause of action (*Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 490 N.E.2d 976 (1981)), the plaintiffs' claims may survive if they have pled sufficient facts to invoke the discovery rule. *Clay v. Kuhl*, 189 Ill. 2d 603, 727 N.E.2d 217 (2000). Therefore, the next step in our analysis is to determine whether the discovery rule can

save plaintiffs' claims.

## B. The Discovery Rule

We find that the plaintiffs did not plead sufficient facts to invoke the discovery rule and therefore the trial court correctly dismissed plaintiffs' complaint as it was filed after the applicable statute of limitations. On this point, we find that this case is on all fours with *Clay*.

The plaintiff in *Clay* was born on March 31, 1964, and alleged that the defendant began molesting her in either 1972 or 1973. *Clay*, 189 Ill. 2d at 605. For the next seven to eight years, it was alleged that the defendant molested the plaintiff more than 900 times. *Clay*, 189 Ill. 2d at 605. The plaintiff turned 18 on March 31, 1982, and 20 years old on March, 31, 1984. However, the *Clay* plaintiff alleged that she did not realize defendant's conduct caused her to suffer injuries until June of 1994, at which time she would have been 30 years old. *Clay*, 189 Ill. 2d at 606. In January of 1996, approximately two months before her thirty-second birthday, the *Clay* plaintiff filed suit. *Clay*, 189 Ill. 2d at 607.

The Illinois Supreme Court held that the suit in *Clay* was "untimely under the discovery rule. In the present case, the allegations of the plaintiff's complaint make it clear that the plaintiff had sufficient information about her injury and its cause to require her to bring suit long before the date of discovery alleged in the complaint." *Clay*, 189 Ill. 2d at 610. The court continued that, "Given the allegations in the third amended complaint, which show that the plaintiff was always aware of the misconduct charged, and the absence of any contrary assertion that the plaintiff repressed memories of the abuse, we believe that the plaintiff's action must be considered untimely under the

discovery rule." *Clay*, 189 Ill. 2d at 610. The court based its reasoning on the fact that, "Illinois law presumes an intent to harm and a resulting injury from the type of misconduct allegedly committed" by the *Clay* defendant. *Clay*, 189 Ill. 2d at 611. Moreover, the court reiterated the well-established rule of law that there is no requirement that a plaintiff must know the full extent of his or her injuries before suit must be brought under the applicable statute of limitations. *Clay*, 189 Ill. 2d at 611. To hold otherwise, the court noted, "would improperly create a subjective standard by which accrual of a cause of action would have to be measured." *Clay*, 189 Ill. 2d at 613.

As noted above, this consolidated appeal involves five plaintiffs, Brian Softcheck, James Fonck, John Doe I, John Doe II, and John Doe III. All five plaintiffs were born between February of 1965 and March of 1969. Plaintiffs' complaints allege they were abused between 1978 and 1980. The sexual abuse alleged varied for each individual and ranged from the perpetrator(s) exposing the plaintiffs to pornography (heterosexual and homosexual), to manipulating plaintiffs' genitals, initially outside the clothing, then inside the clothing, and progressing to masturbation. There were no contemporaneous physical injuries. Plaintiffs deny that they were aware of any psychological injury at the time. The youngest plaintiff was 9 years old at the time of the abuse and the oldest 14 years of age. At the time they filed suit, the youngest plaintiff was 33 years old, having reached the age of majority 15 years prior, and the oldest was 37 years old, having reached the age of majority 19 years prior. The plaintiffs alleged in their complaints that were dismissed that they did not "begin to perceive the wrongfulness" of the abuse they suffered "until 2002 when [they] heard of pedophile priest litigation involving other priests and dioceses and began to realize that [their] own experiences may been

˘12˘

victimization [*sic*] possibly having a causal relation to [their] emotional and psychological disturbances."  The allegation regarding their failure "to perceive the wrongfulness of the conduct" of the priest and delay in recognizing that their "victimization possibly" has a "causal relation to" their injuries, plaintiffs' submit, is sufficient to invoke the discovery rule and bring their complaints within the applicable statute of limitations.  We disagree.

The issue of whether an action was brought within the time allowed by the discovery rule is generally a question of fact.  *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 485 N.E. 2d 1076 (1985); *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 421 N.E. 2d 864 (1981).  However, the question may be determined as a matter of law when the answer is clear from the pleadings.  *Clay*, 189 Ill. 2d at 609-10.  When resolving a motion to dismiss, a court must assume that all well-pleaded facts are true and may consider all reasonable inferences that can be drawn from those facts.  *Salisbury v. Majesky*, 352 Ill. App. 3d 1188, 1190 817 N.E. 2d 1219, 1221 (2004).

The *Clay* court was clear, "Illinois law presumes an intent to harm and a resulting injury" from sexual abuse of a minor.  *Clay*, 189 Ill. 2d at 611.  As a matter of law, adults are charged with the knowledge that sexual contact between 9- to 14-year-old boys and an adult is not only harmful and wrong but also that it results in injury.  Therefore, plaintiffs' allegations that they did not "perceive the wrongfulness of the conduct of defendant" and that they did not "realize that [their] own experiences may been victimization [*sic*] possibly having a causal relation to" simply do not lead to a reasonable inference sufficient to invoke the discovery rule.  We find the circuit court was correct in finding plaintiffs' complaints were untimely and granting defendants'

motions to dismiss.  To hold otherwise, in the words of the *Clay* court, "would improperly create a subjective standard by which accrual of a cause of action would have to be measured."  *Clay*, 189 Ill. 2d at 613.  There is no allegation in plaintiff's complaints that defendants or anyone tried to convince the plaintiffs, after they reached their majority, that sex between a priest and a child is not wrongful but, rather, beneficial to the child's growth.  See *Clay*, 189 Ill. 2d at 614.

Statutes of limitations exist for very legitimate reasons.  Memories fade; witnesses disappear; documents are lost or destroyed.  The law recognizes the injustice of requiring one to defend against stale claims.  This is no less true where the tort alleged, as here, is particularly loathsome.

### C. Court's Exercise of Jurisdiction and the First Amendment

Finally, Gibbney argues the complaint asks the court to pass judgment on the beliefs and practices of the Catholic Church, specifically those requiring acceptance of hierarchical authority and adherence to church doctrines.  The trier of fact, he contends, is being asked to examine not only whether Gibbney knew that Fonck's religious beliefs made him susceptible to severe emotional distress, but it is also being asked to judge the validity and acceptability of church doctrine as to papal and hierarchical infallibility.  The first amendment's free exercise clause prohibits courts from considering claims requiring the interpretation of religious doctrine.

"Nonetheless, when doctrinal controversy is not involved in a
dispute between a claimant and a church, the first amendment does not
require judicial deference to religious authority.  [Citation.]  For instance,
'in disputes over church property, Illinois courts have applied a "neutral

˘14˘

principles of law" approach, objectively examining pertinent church characteristics, constitutions and bylaws, deeds, State statutes, and other evidence to resolve the matter the same as it would a secular dispute. [Citation.]  Using such an approach, the dispute must be resolved applying neutral legal principles, using purely secular analyses without relying on religious precepts.'  [Citation.]"  *Amato v. Greenquist*, 287 Ill. App. 3d 921, 926, 679 N.E.2d ___,  450 (1997), quoting *Bivin v. Wright*, 275 Ill. App. 3d 899, 903, 656 N.E.2d 1121 (1995).

Gibbney's claims are without merit.  Nowhere in plaintiffs' complaints is the court asked to "pass judgment" on church doctrine.  Plaintiffs would be required to establish their allegations as to church teachings as facts.  The trier of fact would determine, however, only whether the church in fact teaches what plaintiffs allege it teaches.  The trier of fact would not have to determine, for example, whether the pronouncements of the church, as articulated by the individual defendants, are, in fact, infallible or for that matter even true.  The trier of fact may accept the allegations of plaintiffs' complaints as facts and find that, in fact, plaintiffs believed them without making a judgment as to whether those beliefs are valid or acceptable.  Just as courts have objectively examined church characteristics in disputes over property, the trier of fact can objectively examine those church characteristics plaintiffs allege were asserted by the clerical defendants and are relevant to their claims.  The trial court did not err in exercising subject matter jurisdiction over plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court

˘15˘

of Will County is affirmed.

Affirmed.

LYTTON, J., concurs.

McDADE, J., concurs in part and dissents in part.

JUSTICE McDADE, specially concurring in part and dissenting in part:

---

I agree with the majority's conclusion that plaintiffs' claims survive only if they have pled sufficient facts to invoke the discovery rule. I also agree that the trial court did not err in exercising subject matter jurisdiction over plaintiffs' claims. I disagree with the majority's reasoning leading to its conclusion that plaintiffs' complaints fail to invoke the discovery rule. I find that an ingenuous review of the pleadings under the applicable standard of review must lead to the conclusion that the allegations of plaintiffs' complaints are sufficient to invoke the discovery rule and, therefore, that the trial court erred in dismissing the complaints. Accordingly, I dissent from that portion of the majority's opinion.

The majority's reasoning is flawed in two respects. First, it mistakenly concludes that the case at bar is on all fours with *Clay*. The majority completely fails to engage in the comparison of the allegations at issue in *Clay* and those involved here that is necessary to reach such a conclusion and instead expands *Clay*'s holding beyond its clearly-stated reach. Second, the majority's analysis virtually ignores the well-pled allegations in plaintiffs' complaints.

Turning first to the majority's mistaken reliance on *Clay*, its only basis for the conclusion that these two cases are on all fours, and for affirming the dismissal of plaintiffs' complaints, seems to me to be the fact that in each case, the plaintiffs alleged that they did not realize that the defendants' conduct caused them

˘16˘

to suffer injuries for many years after reaching majority. However, closer scrutiny of the factual allegations in *Clay* and of those in the case at bar in support of that assertion is not only warranted, it is crucial because, as the majority correctly noted, whether plaintiffs' complaints survive depends on whether plaintiffs have pled sufficient facts to invoke the discovery rule. That is, the inquiry for purposes of this appeal is whether the instant plaintiffs have sufficiently alleged that they did not know nor reasonably should have known of their injuries or that they were wrongfully caused see *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415, 430 N.E.2d 976, 980 1981 the statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused 'until 2002 when they heard of pedophile priest litigation involving other priests and dioceses and began to realize that their own experiences may been sic victimization possibly having a causal relation to their emotional and psychological disturbances.' *Softcheck*, slip op. at 14. I also note, and will address in greater detail below, that the inquiry is whether plaintiffs have made sufficient allegations, not provided conclusive proof, of the proposition stated above.

*Clay* may have held that 'Illinois law presumes an intent to harm and a resulting injury' from sexual abuse of a minor *Softcheck*, slip op. at 15, quoting *Clay*, 189 Ill. 2d at 611, but that is not the same as saying that Illinois law presumes the injured party knows he was injured by sexual abuse. If such a presumption existed under Illinois law, the *Clay* court would not have needed to find that the plaintiff had sufficient information about her injury and its cause to require her to bring suit long before the date of discovery alleged in the complaint. *Clay*, 189 Ill. 2d at 610, 727 N.E.2d at 221. The knowledge of her injury would have been imputed to her regardless of what information she possessed. Thus, *Clay* does not stand for the general proposition, found by the majority, that the assertion by plaintiffs that they did not perceive the wrongfulness of sex between an adult and a minor is unreasonable as a matter of law. Rather, *Clay*'s holdings is based on an examination of the allegations of the plaintiff's complaint in that

case as it related to what she knew and when she knew it. The court found, based on the allegations in the complaint, that the plaintiff in *Clay* knew the abuse occurred and that it was harmful. *Clay*, 189 Ill. 2d at 613, 727 N.E.2d at 223. The plaintiff did not deny this, but sought to invoke the discovery rule because she did not discover, until years later, the *full extent* of the injuries she allegedly sustained. Emphasis added. *Clay*, 189 Ill. 2d at 613, 727 N.E.2d at 223. The court declined to apply the discovery rule because t here is no requirement that a plaintiff must know the full extent of his or her injuries before suit must be brought under the applicable statute of limitations. *Clay*, 189 Ill. 2d at 611, 727 N.E.2d at 222.

Here, plaintiffs claim they did not realize the wrongfulness of defendants' actions *at all* until hearing of other cases of sexual abuse against minors involving priests. The majority notes that t here is no allegation in plaintiff's sic complaints that defendants or anyone tried to convince the plaintiffs, after they reached their majority, that sex between a priest and a child is not wrongful but, rather, beneficial to the child's growth. *Softcheck*, slip op. at 16. No one had to. Defendants, according to plaintiffs' allegations, imprinted that belief—cruelly and effectively—on plaintiffs as minors and they continued to believe those teachings until scores of others stepped forward to say defendants were wrong.

The *Clay* court relied heavily on the fact that there, t he plaintiff did not contend that she was not aware that the alleged abuser's misconduct *was harmful*. Emphasis added. *Clay*, 189 Ill. 2d at 613, 727 N.E.2d at 223. Here, on the contrary, plaintiffs clearly alleged that they lacked sophistication to perceive psychological or emotional harm or injury proximately resulting from defendants' behavior. Plaintiffs also alleged they did not, in fact, begin to perceive the wrongfulness of the conduct of defendant s until 2002. The allegations in the instant case are different from those in *Clay*. I do not find, and the majority does not offer, a basis for extrapolating the *Clay* court's narrow holding to other cases.

Not only is *Clay* factually distinguishable, the scope of its holding is explicitly limited to the facts of that case. See *Clay*, 189 Ill. 2d at 610, 727 N.E.2d at 221  We believe that the circumstances *alleged in this case* allow this issue to be resolved as a matter of law   emphasis added  . Certainly *Clay*, which draws its holding singularly from the meaning of and reasonable inferences to be drawn from the factual allegations in *that* case, does not provide the proper foundation for a general proposition of law that adults who suffer childhood sexual abuse know instantly--one might say magically--upon attaining 18 years of age that the abuse was harmful and resulted in an injury. Here, unlike *Clay*, plaintiffs' factual allegations directly contradict the conclusion that they were aware that their psychological injuries were caused by the alleged abuse.

Further, I find the majority's dismissal of the reasonableness of plaintiffs' allegations as to when they first began to perceive the harm of defendants' conduct to be inappropriate. Plaintiffs' factual allegation, taken as true  *Salisbury v. Majesky*, 352 Ill. App. 3d 1188, 1190, 817 N.E.2d 1219, 1221  2004  , is that they were repeatedly assured that sex between a *priest* and a child is not wrongful but is, indeed, beneficial to the child's growth. This factual allegation supports plaintiffs' conclusion that they did not perceive the wrongfulness of defendants' conduct until hearing of other litigation involving priests. Plaintiffs' allegations are not clearly unreasonable.

A motion to dismiss accepts all reasonable inferences favorable to the non-moving party which can be drawn from those facts. *Album Graphics, Inc. v. Beatrice Foods Co.*, 87 Ill. App. 3d 338, 344, 408 N.E.2d 1041, 1046  1980 . The majority finds that plaintiffs' allegations  do not lead to a reasonable inference sufficient to invoke the discovery rule.  *Softcheck*, slip op. at 15. I agree that it is reasonable to infer that plaintiffs' knew that what they suffered from defendants was wrong. However, I believe that a reasonable inference which can also be drawn from plaintiffs' complaints, read in their entirety and in plaintiffs' favor, is that they, unlike the plaintiff in *Clay*, were not aware the misconduct

˘19˘

was harmful to them. Plaintiffs alleged that defendant priests repeatedly assured them that their teachings that their conduct was not harmful but was in fact beneficial were perfect and infallible and superior to imperfect human laws. One could reasonably infer that plaintiffs believed the alleged teachings of their faith.

Further, to say, as the majority's holding suggests, that plaintiffs' allegations are *per se* unreasonable simply because they, at some point, became adults would effectively obliterate the discovery rule for adult plaintiffs in cases such as these. The majority would find that their causes of actions accrued on an arbitrary date established as adulthood rather than when they actually knew or reasonably should have known of their injury and that it was wrongfully caused. The discovery rule protects against such mechanical application of the statute of limitations and the harsh consequences that could result from barring plaintiffs' from bringing suit before they even knew they were injured. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 360, 657 N.E.2d 894, 898 1995 .

Moreover, if there is a disputed question of fact about when an injured party knows *or reasonably should have known* of his injury and that it was wrongfully caused, it is to be resolved by the finder of fact. *Emphasis added.* *Holladay v. Boyd*, 285 Ill. App. 3d 1006, 1013, 675 N.E.2d 262, 266 1996 , citing *Lipsey v. Michael Reese Hospital*, 46 Ill. 2d 32, 262 N.E.2d 450 1970 . Here, a question of fact remains as to when plaintiffs discovered, or reasonably should have discovered, that their injuries were caused by the alleged abuse. In *Clay*, no question existed as to when the plaintiff discovered her injury or that is was caused by the abuse. The court found, based on the plaintiff's own allegations, that she always knew. See *Clay*, 189 Ill. 2d at 610.

I understand that the majority believes that it is unreasonable for an adult to not know they were harmed by what happened to plaintiffs. But resolving the motion to dismiss in plaintiffs' favor would not equate to finding plaintiffs were in fact reasonable in failing to discover either their injuries or the causal

relationship between those injuries and the alleged abuse. The determination of the *objective* reasonableness of plaintiffs' allegations as to their subjective beliefs and perceptions should be made by the trier of fact, not the majority. See *Boyd*, 285 Ill. App. 3d at 1013, 675 N.E.2d at 266. Thus, permitting plaintiffs to proceed with their cause of action would not 'create a subjective standard by which accrual of a cause of action would have to be measured.' *Softcheck*, slip op. at 16, quoting *Clay*, 189 Ill. 2d at 613.

The majority cites no case law--other than its misreading of *Clay*--that actually says that it is objectively unreasonable for an adult not to recognize that a childhood sexual abuse they may have suffered was harmful. That allegations seems especially reasonable where, as here, plaintiffs were told that what they experienced was beneficial *in spite of* their innate but inferior and inadequately informed sense of propriety or rectitude. An allegation, I note, not present in *Clay*. The majority's finding necessarily ignores the potentially long-term effects of childhood psychological trauma and the effects of defendants' manipulation of plaintiffs.

For the foregoing reasons, I would hold that whether plaintiffs' causes of action are barred by the statute of limitations is not clear from the pleadings and reverse the trial court's order dismissing them.

˘21˘