# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

### *Doe v. Carlson*, 2017 IL App (1st) 160536

</div>

| | |
|---|---|
| Appellate Court Caption | JANE DOE, Plaintiff-Appellant, v. CHERIE CARLSON, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-16-0536 |
| Filed | February 7, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-13466; the Hon. John P. Callahan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Heath & Heath, P.C., of Naperville (Sharon L. Heath and Timothy W. Heath, of counsel), for appellant.<br><br>Law Offices of Michael P. Schmiege, of Hinsdale (Michael P. Schmiege, of counsel), for appellee. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Jane Doe appeals an order dismissing her November 2013 complaint alleging negligence, civil battery, and intentional infliction of emotional distress against defendant, Cherie Carlson, on the basis that the statute of limitations had expired. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3    This case arises from Cherie Carlson's alleged sexual abuse of Jane Doe, beginning when Doe was 16 years old. In her deposition, Doe, who was born in September 1979, testified that she belonged to the North Side Gospel Church and, through the church, became a member of the Approved Workmen Are Not Ashamed (AWANA) club at the age of five. Beginning at the age of 11 or 12, Doe attended the AWANA overnight camps in Wisconsin for approximately two weeks every summer.

¶ 4    Carlson was a leader at the church in charge of the high school AWANA youth group. Doe met Carlson when Doe was 12 or 13, but the two did not have regular contact until Doe joined the high school youth group when she was 14 years old. At that time, Doe saw Carlson at youth group meetings once a week, at church on Sundays, and for sporadic extracurricular activities.

¶ 5    In the summer of 1996, when Doe was 16, she attended the AWANA overnight camp, where she was one of several youth group leaders for the younger members, and Carlson was in charge of the leaders. Carlson told Doe during a series of conversations that she was interested in pursuing a "discipleship" or mentor-mentee relationship with Doe. Doe understood this to mean that Carlson wanted to read the Bible together and act as her teacher and spiritual advisor. Doe was aware that Carlson previously had a mentor-mentee relationship with another youth group leader. Doe had seen the other leader in bed with Carlson at camp in the summer of 1993 or 1994, when Doe was 12 or 13. After Doe agreed to the discipleship, Carlson began lying in bed with Doe, cuddling her, and giving her back rubs.

¶ 6    When Doe returned from camp in August 1996, Carlson invited her to Carlson's parent's house to watch a movie, at which time Carlson fondled her. Doe cried and pulled away, and Carlson, also crying, apologized. Doe testified that she felt ashamed, surprised, and scared because she knew the touching was wrong. Although Carlson assured Doe it would not happen again, approximately one month later, in Carlson's car, Carlson moved her hand up Doe's leg and kissed Doe. Again, Doe cried and Carlson apologized. From September to December 1996, the abuse occurred on at least 10 occasions. In early 1997, Doe testified that Carlson sexually penetrated her in Carlson's parent's house, which Doe knew was "inappropriate." Over the next several years, Carlson continued to abuse Doe, often taking her to hotels when Carlson's parents were home.

¶ 7    Doe testified that the sexual abuse became less frequent when she began college and stopped altogether in 1999 when Doe was 20, because Doe "couldn't take it anymore" and felt Carlson was no longer interested in being her spiritual advisor, but was using her for sex. At no point did Doe feel that her relationship with Carlson was consensual.

¶ 8    Doe did not report Carlson's behavior while it was occurring because she was aware that when the other youth group leader made allegations against Carlson, the leader and her family

left the church, while Carlson remained. In addition, Carlson threatened to kill herself if Doe told anyone about the abuse.

¶ 9    In 1999, after the abuse had stopped, Doe received a phone call from a woman named Dianna, who asked Doe if Carlson ever tried to touch her. Doe did not answer the question directly, but later called Dianna's cousin, Claire, and told her about Carlson's abuse toward her because she was concerned about Dianna. Specifically, Doe told Claire that Carlson was "sexually inappropriate" with her in the hopes that Claire would "warn" her cousin. At around this same time, Doe began experiencing chronic anxiety, sadness, and nightmares. However, Doe testified that she did not connect these feelings to Carlson's abuse until more than a decade later, when in 2012 she told her husband what she had suffered and began therapy. Her therapist diagnosed her with post-traumatic stress disorder arising out of the abuse.

¶ 10    Doe filed suit against Carlson, among others, on November 15, 2013. Carlson moved to dismiss the suit on the grounds that the statute of limitations had expired in 2001, two years after Doe knew or should have known both that the abuse occurred and that her injury was caused by the abuse. See 735 ILCS 5/13-202.2(b) (West 1996). The trial court agreed and granted Carlson's motion.

¶ 11                                                    ANALYSIS

¶ 12    The sole issue on appeal is the timeliness of Doe's suit against Carlson. The relevant statute of limitations provides that "An action for damages for personal injury based on childhood sexual abuse must be commenced within 2 years of the day the person abused discovers or through the use of reasonable diligence should discover that the act of childhood sexual abuse occurred and that the injury was caused by the childhood sexual abuse." 735 ILCS 5/13-202.2(b) (West 1996). The statute further provides that the limitations period under subsection (b) does not begin to run until the victim of the abuse is 18 years old. 735 ILCS 5/13-202.2(d) (West 1996).

¶ 13    The trial court granted Carlson's motion to dismiss the complaint as untimely pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2012)), and our review of that dismissal order is *de novo* (*Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006)). Ordinarily, the issue of when the statute of limitations begins to run under the discovery rule is one of fact, but when the answer is clear from the pleadings, we may decide this issue as a matter of law. *Softcheck v. Imesch*, 367 Ill. App. 3d 148, 156 (2006). Significantly, we accept as true all well-pleaded facts in the plaintiff's complaint and draw reasonable inferences from those facts in favor of the plaintiff as the non-moving party. *Chicago Title Insurance Co. v. Teachers' Retirement System*, 2014 IL App (1st) 131452, ¶ 13.

¶ 14    Carlson argues that Doe knew of the abuse and knew or should have known that her injury was caused by the abuse no later than 1999, shortly after she ended her relationship with Carlson. Therefore, the limitations period expired two years later in 2001, according to Carlson. In support, Carlson cites *Clay v. Kuhl*, 189 Ill. 2d 603 (2000), and *Parks v. Kownacki*, 193 Ill. 2d 164 (2000). Significantly, both cases address sexual abuse that occurred prior to the time the legislature enacted a separate statute of limitations for actions involving childhood sexual abuse. Before 1991, the applicable statute of limitations for abuse cases was two years, the same as for all cases involving personal injury. See Ill. Rev. Stat. 1989, ch. 110, ¶ 13-202. A separate section of the pre-1991 Code provides that the two-year period for bringing a cause

of action for personal injury does not begin to run until the plaintiff reaches the age of 18. Ill. Rev. Stat. 1989, ch. 110, ¶ 13-211. In both *Clay* and *Parks*, the plaintiffs waited well over two years past the time of the abuse to file their complaints, but both plaintiffs claimed the benefit of the discovery rule. *Clay*, 189 Ill. 2d at 607-08; *Parks*, 193 Ill. 2d at 173-74. Pursuant to the discovery rule, "a party's cause of action accrues when the party knows or reasonably should know of an injury and that the injury was wrongfully caused." *Clay*, 189 Ill. 2d at 608 (citing *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981)).

¶ 15    In *Clay*, the plaintiff, who filed suit in 1996, admitted that she knew of the abuse at the time it occurred in the 1970s, but she did not realize her " 'sexual encounters' " with the defendant had caused her later psychological injuries until June 1994. *Id.* at 605, 609. But the supreme court held that application of the discovery rule did not save the plaintiff's complaint, which was otherwise untimely. *Id.* at 610. The court's decision rested on the fact plaintiff "[did] not argue that she repressed her memories of the abuse" and that she "was aware of the abuse at the time it occurred." *Id.* The court went on to hold that "Illinois law presumes an intent to harm and a resulting injury" from the "misconduct" committed by the defendant. *Id.* at 611; see also *Softcheck*, 367 Ill. App. 3d at 156 ("As a matter of law, adults are charged with the knowledge that sexual contact between 9- to 14-year-old boys and an adult is not only harmful and wrong but also that it results in injury."). Accordingly, the plaintiff's complaint was untimely, since she knew of the abuse (which was tantamount to knowing she was injured) and that her injury was wrongfully caused by the time she turned 18 in 1983, but did not file suit until 14 years later. *Clay*, 189 Ill. 2d at 610-12.

¶ 16    The supreme court reached the same conclusion in *Parks*. There, the plaintiff likewise alleged that, while she had not repressed memories of the abuse by her priest, she did not connect her post-traumatic stress disorder diagnosis with that abuse until over 20 years after the abuse ended. *Parks*, 193 Ill. 2d at 177. Moreover, she alleged that at the time the abuse was occurring, she did not know that the sexual relationship between her and her priest was wrong. *Id.* The supreme court, citing *Clay*, held that the discovery rule did not save the plaintiff's claims. *Id.* at 177-78. The court pointed out that, despite the plaintiff's allegations, her actions of reporting the abuse to her parents and a church leader demonstrated that she knew the defendant had wronged her. *Id.* at 177. Further, the plaintiff reasonably should have known that a portion of her injury—namely, the abortion the defendant forced her to obtain—was caused by the abuse. *Id.* at 177-78. The court concluded that the facts regarding plaintiff's knowledge were stronger than those in *Clay* and affirmed the dismissal of the plaintiff's complaint as time-barred. *Id.* at 178.

¶ 17    Doe disputes the applicability of *Clay* and *Parks*, pointing out that they do not interpret section 13-202.2 of the Code but instead apply the common law discovery rule. But Doe overlooks the supreme court's express finding in *Clay* that section 13-202.2 of the Code "codif[ied] the common law discovery rule for actions involving childhood sexual abuse." *Clay*, 189 Ill. 2d at 609. As such, we are hard-pressed to find inapposite cases applying that rule.

¶ 18    Significantly, Doe's allegations bear striking similarities to those made by the *Clay* and *Park* plaintiffs. First, Doe does not allege her memories of the abuse were repressed. Further, while she, too, denied awareness of the fact that the contact between her and Carlson was criminal, she admitted that she knew the contact was "wrong" and "inappropriate" at the time it was occurring. Doe elaborated that she did not believe her encounters with Carlson amounted

- 4 -

to a consensual dating or sexual relationship. It is well-settled that under the discovery rule a plaintiff need not appreciate the criminality of the conduct at issue to be charged with knowledge that her injury was wrongfully caused. See *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 24 (citing *Knox*, 88 Ill. 2d at 415-16). Finally, just as the plaintiff in *Parks*, Doe, at the age of 20, informed a third party that Carlson had been "sexually inappropriate" with her. Indeed, Doe had considered reporting Carlson's conduct earlier, but decided against it after remembering that another girl whom Carlson mentored made similar allegations that Carlson "inappropriately touch[ed]" her, only to end up leaving the church with her family. Doe also recalled that her youth group leader at the time ordered the members not to discuss those allegations. Taken together, and contrary to her argument on appeal, Doe's testimony establishes that she knew of Carlson's abuse at the time it occurred.

¶ 19    Turning then to the issue of when Doe knew that her injuries were caused by the sexual abuse (the second prong of section 13-202.2(b)), pursuant to *Clay*, knowledge of injury is presumed where the victim was aware of the sexual abuse as it was occurring (*Clay*, 189 Ill. 2d at 611-12). And even assuming *arguendo* that this presumption of knowledge of injury is inapplicable, Doe's testimony nevertheless reveals that she had actual knowledge of the cause of at least a portion of her injuries when they occurred.

¶ 20    In Doe's complaint, she states a claim for, *inter alia*, intentional infliction of emotional distress against Carlson, alleging that "as a direct result of [Carlson's] conduct" she "suffered and will continue to suffer *** severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, and loss of self-esteem, humiliation and psychological injuries." All these are injuries Doe testified she suffered immediately following the abuse. For example, Doe testified that after Carlson fondled her, Doe began crying and felt shame, fear, and embarrassment. These same reactions and feelings occurred whenever Carlson abused her. To be sure, Doe may not have realized that the persistent nightmares and ongoing emotional problems she experienced in her 20s were likewise attributable to the abuse, but it is not necessary that a plaintiff recognize the full extent of his or her injuries before bringing suit. See, *e.g.*, *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 367 (1995). Thus, regardless of the applicability of the *Clay* presumption, the evidence reveals that Doe actually knew that a portion of her injury was caused by the abuse at the age of 16. And pursuant to section 13-202.2(d), when Doe reached the age of 18, the statute of limitations began to run. See 735 ILCS 5/13-202.2(d) (West 1996). The statute expired two years later, in 1999, well before Doe filed her complaint against Carlson in 2013. The circuit court's order dismissing Doe's complaint as time-barred is therefore affirmed.

¶ 21    Affirmed.