PAMELA GIAGNORIO, Plaintiff-Appellant, v. EMMETT C. TORKELSON TRUST *et al.*, Defendants-Appellees.

Second District No. 2—96—1415

Opinion filed October 10, 1997.

Robert G. Black, of Naperville, for appellant.

David J. Winthers, of Mullen & Winthers, P.C., of Winfield, for appellees Emmett C. Torkelson Trust and Joan M. Torkelson.

Murphy & O'Connor, of Oak Lawn, and Peter M. Murphy, of Orland Park, for appellee James Torkelson.

JUSTICE RATHJE delivered the opinion of the court:

Plaintiff, Pamela Giagnorio (Pamela), brought this action, alleging that defendant, Joan Torkelson (Joan), breached her fiduciary duties as trustee of the Emmett C. Torkelson Trust (Trust), dated January 27, 1989. Specifically, Pamela alleged that the sale of the Trust corpus by Joan to defendant, James Torkelson (James), breached Joan's duty to Pamela, a contingent beneficiary of the Trust. Pamela's complaint was dismissed, and she was given leave to file an amended complaint. After extensive briefing and argument, the trial court dismissed Pamela's amended complaint with prejudice, citing *Bracken v. Block*, 204 Ill. App. 3d 23 (1990). This timely appeal followed.

On appeal, Pamela generally argues that the trial court erred in finding her amended complaint did not set forth facts stating a recognized and viable cause of action and that said complaint, at the very least, raised genuine issues of material fact surrounding the subject transaction and the discharge of the trustee's duties, so as to preclude judgment in defendants' favor as a matter of law.

The record at bar reveals the following relevant facts. On Janu-

ary 27, 1989, Emmett C. Torkelson (Emmett), established the subject Trust to hold his interest in a business called Alu-Bra Foundry, Inc. (Alu-Bra). At the time the Trust was created, Emmett C. Torkelson was married to Joan Torkelson. Among their children were the plaintiff, Pamela Giagnorio, and one of the defendants, James Torkelson. Both Pamela and James are contingent beneficiaries of the Trust. The Trust's corpus consisted of all of Alu-Bra's outstanding shares, which totalled 3,333¹/₃ shares. The Trust instrument designated Emmett's wife, Joan, and his daughter, Pamela, as co-trustees upon Emmett's death. Pursuant to the Trust instrument, either Joan or Pamela could act alone as trustee after the death, resignation, or disability of the other.

Further, the Trust instrument provided that, upon Emmett's death, the balance of the Trust shall be set aside as a separate Trust, known as the "Family Trust." The trustee was directed to pay income from the Family Trust to Joan in installments during her lifetime or to use the Trust's principal as "necessary or advisable" for Joan's "health, maintenance and reasonable comfort."

The Trust instrument also provided the following formula for a trust (marital trust) to be created for Joan's benefit upon Emmett's death:

> "If JOAN M. TORKELSON, herein referred to as 'my wife' survives me, the trustee as of my death shall set aside out of the trust estate as a separate trust for her benefit a fraction of the trust property of which (i) the numerator is the smallest amount which, if allowed as a federal estate tax marital deduction, would result in the least possible federal estate tax payable by reason of my death, and (ii) the denominator is the federal estate tax value of the assets included in my gross estate which became (or the proceeds, investments or reinvestments of which became) trust property."

The Trust instrument further states that all of Emmett's children, with the exception of Candace M. Torkelson, will receive equal shares of the Family Trust "including any amounts added thereto from the Marital Trust" upon Joan's death, should she survive him. Descendants of any deceased children were to receive the deceased child's share *per stirpes*.

The Trust instrument granted to the trustee(s) broad discretionary powers, which included the trustee's right to retain Trust property, to invest the corpus, to lease Trust property, and to perform any other acts necessary for the proper administration of the Trust.

The Trust instrument also permitted the trustee to retain any ownership in the Trust corpus, namely, Alu-Bra. In addition to the

ability to retain the ownership interest, the trustee was given broad discretion in making business decisions on behalf of Alu-Bra.

At some point not disclosed by the record or the parties' briefs, Emmett died. On February 10, 1991, Pamela resigned as co-trustee of the Trust, leaving Joan as the sole trustee. On February 22, 1995, in her capacity as the sole trustee of the trust, Joan entered into a stock purchase agreement (Agreement) with James, a contingent beneficiary of the Trust. Under this Agreement, Joan agreed to sell to James all the 3,333¹/₃ shares of Alu-Bra in the Trust for $400,000, plus 8% interest per year to be paid in quarterly installments to Joan. James further agreed to execute a promissory note (Note) to pay the final purchase price on January 1, 2025. To secure the Note, James agreed to purchase two life insurance policies on Joan's life in the total amount of $437,993. In the event of Joan's death, James agreed to pay off the Note with the proceeds of these policies.

James also agreed not to borrow against the policies' cash value without Joan's permission and under no circumstances was James to borrow any amount that would reduce the policies' cash value below $400,000. James further acknowledged pending zoning and building code disputes between Alu-Bra and the Village of Bensenville.

The Note was executed at the same time as the Agreement. The Note required James to make weekly interest payments to Joan of $615.38. The Note further provided for a final payment of $400,615.38 on February 22, 2025, or sooner, if James defaulted on the Note. The Note was secured by the two life insurance policies. It further provided that Joan had the right to accelerate the Note and demand full payment in the event of a default by James. Additionally, the Note was payable in full upon Joan's death.

James also executed a pledge and escrow agreement (Escrow Agreement) between Joan's law firm and himself. The Escrow Agreement provided that all the certificates for the 3,333¹/₃ shares of Alu-Bra stock would be held in escrow by Joan's law firm pending the Note's payment. However, James retained the right to receive any income from the shares and the right to vote the Alu-Bra shares.

On June 1, 1995, Pamela filed her complaint, which generally alleged that there were significant deficiencies in the Agreement and that Joan had breached her fiduciary duties as sole trustee. Pamela sought to have the Agreement revoked and to have Joan removed as trustee. Thereafter, defendants filed a motion for dismissal pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)), and Pamela filed a response to said motion. The trial court granted the motion to dismiss but permitted Pamela to file an amended complaint.

The amended complaint alleged, *inter alia*, that Joan agreed to sell the Trust corpus for $400,000; that the value of the land owned by Alu-Bra was appraised at $290,000; that the company was valued by Bretel, Davey and Associates to be worth $500,000 on December 31, 1992; that, based upon all appraisals, the value of Alu-Bra stock and land ranged from a low of $665,000 to $790,000; that all appraised values were substantially higher than the agreed purchase price; that the Note executed by Joan and James required no cash down payment; that the Note is deficient in that it only allows for the entry of a judgment for any amounts due as of the date of a default as well as interest and attorney fees; that the Note does not allow for the recovery of the stock should James become insolvent, thus leaving the Trust and beneficiaries unprotected in the event of such a default; that the acceptance of the Note in the full amount was a breach of fiduciary duty owed the beneficiaries by Joan; that the pledge and escrow agreement regarding the Alu-Bra shares is merely a resort to the terms of the Uniform Commercial Code; that the pledge and escrow agreement does not provide adequate security to protect the Trust's and beneficiaries' interests; and that the Agreement requires James to purchase and maintain certain life insurance policies insuring the life of Joan.

Further, the amended complaint sought the revocation of the Agreement and the removal of Joan as trustee. In their motion to dismiss made pursuant to section 2—615, defendants maintained that the ordinary fiduciary duty owed to the beneficiaries at common law was distinguishable from the duty owed beneficiaries of a trust administered by the primary beneficiary acting as trustee; that the Trust granted Joan broad discretionary powers; and that the Agreement did not breach any fiduciary duties that Joan might owe the contingent beneficiaries.

After Pamela filed her response to defendants' motions and defendants filed their reply to Pamela's response, the motions were argued before the trial court on March 7, 1996. In its memorandum opinion and order dated April 29, 1996, the trial court stated in relevant part:

"The Court finds that the case of *Bracken v. Block*, 204 Ill. App. 3d 23, 561 N.E.2d 1273, is controlling. In the case at bar, as in *Bracken*, the Trustee under a testamentary scheme was given broad powers to deal with the corpus of the trust. In addition, JOAN was given broad powers to fund the Marital and Family Trusts. In light of the familial relationship of all the parties, the potential conflict was inherently sanctioned by the document establishing the trust. Similarly, the broad grant of powers and

the status of JOAN as both Trustee and Beneficiary of the trust obviates any claim that the Trustee is required to answer to the contingent beneficiaries for her decisions with regard to trust property."

Subsequently, the trial court denied Pamela's motion for a rehearing, and this timely appeal followed.

■ Initially, we address defendants' argument that Pamela lacks standing as a contingent beneficiary. James cites *Schlosser v. Schlosser*, 247 Ill. App. 3d 1044 (1993), in support of this contention. In contrast, Pamela maintains that the relevant case law holds that she has standing to pursue this action. She further contends that defendants never raised this issue in their initial motion to dismiss Pamela's original complaint or in their motion for "involuntary dismissal" of Pamela's amended complaint.

We initially conclude that the issue of standing was sufficiently raised by defendants before the trial court to preclude the waiver of this contention.

Of the cases cited by the parties, we find Pamela's to be most convincing in this matter.

In *Barnhart v. Barnhart*, 415 Ill. 303, 323 (1953), our supreme court wrote:

"We believe the better rule to be that while a contingent remainderman should not be denied the right to bring an action against the trustees regardless of circumstances and merely because his interest is remote and contingent, nevertheless, the scope of the right should be limited to that which is necessary to protect his possible eventual interest, *i.e.*, the protection and preservation of the trust *res*. It should be afforded only where waste, mismanagement or dissipation of assets appear[s] or can be shown. We hold, therefore, that the final paragraph of the decree was correct."

A couple of years later, the supreme court further outlined its position on the right of a contingent remainderman to pursue actions against a trustee in the case of *Burrows v. Palmer*, 5 Ill. 2d 434 (1955).

"In the recent case of *Barnhart v. Barnhart*, 415 Ill. 303, we stated that a contingent beneficiary should not be denied the right to bring an action against the trustees merely because his interest is remote and contingent, but that he should have the right to such relief as is necessary to protect his possible eventual interest, *i.e.*, protect and preserve the trust *res*. A trustee owes the same fiduciary duty to a contingent beneficiary as to one with a vested interest in so far as necessary for the protection of the contingent beneficiary's rights in the trust property." *Burrows*, 5 Ill. 2d at 440.

In the instant appeal, Pamela is indirectly identified as beneficiary of the Trust in the document's fifth clause, section two. Accordingly, she has an interest in the Trust property, despite the fact that said interest is contingent and may not vest in possession. Further, in her amended complaint, she has alleged actions by Joan that, if substantiated, clearly endanger her interest in the Trust. Under these circumstances, we conclude that Pamela is entitled to pursue this cause of action. In so finding, we have determined that the case on which defendants primarily rely, *Schlosser v. Schlosser*, 247 Ill. App. 3d 1044 (1993), is factually dissimilar to the instant appeal and, thus, is not controlling.

*Schlosser* dealt primarily with the issue of whether the beneficiaries of a prior trust and will, *since revoked*, had standing to challenge a subsequent trust. In contrast, the instant appeal involves a situation in which a contingent beneficiary of a *current* trust has challenged the propriety of action made by the trustee regarding the entire trust corpus.

We now turn to Pamela's sole argument, namely, that her amended complaint properly stated a cause of action and that she was entitled to inquire into the alleged breach of Joan's fiduciary duties. She describes the alleged breaches of Joan's fiduciary duties thusly: (1) failing to exercise reasonable business acumen and judgment in the sale of the business held under trust; (2) taking actions that violate the "prudent investor rule" (760 ILCS 5/5 (West 1994)); (3) breaching her obligation to act impartially toward all beneficiaries; and (4) engaging in a familial conflict of interest.

Pamela further contends that the case relied upon by the trial court and, in large part, by defendants does not address the primary element of her amended complaint, namely, that Joan dealt with the Trust's property for the benefit of only one beneficiary over the interests of all other beneficiaries, thus violating the prudent investor rule.

In response, defendants maintain that the trial court was correct in finding that *Bracken v. Block*, 204 Ill. App. 3d 23 (1990), was controlling. Defendants further contend that the Trust instrument granted Joan broad powers and that Joan was authorized but not required to retain an ownership interest in Alu-Bra. Defendants also argue that there was nothing amiss in the sale of the Trust's shares to James.

■ Initially, we note that the question presented by a section 2—615 motion to dismiss is whether sufficient facts are contained in the pleadings which, if proved, would entitle plaintiff to relief. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 9 (1992). In making

this determination, the court is to interpret the complaint's allegations in the light most favorable to the plaintiff. *Kolegas*, 154 Ill. 2d at 9.

When a motion to dismiss is reviewed, all well-pleaded facts alleged in the complaint are taken as true, and the test for determining the propriety of granting the motion to dismiss is whether it appears that no set of facts may be proved that would entitle plaintiff to recover from defendant. *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 505-06 (1985). The granting of a motion to dismiss for the failure to state a cause of action is within the sound discretion of the trial court. *Evers v. Edward Hospital Ass'n*, 247 Ill. App. 3d 717, 724 (1993).

■ Generally, a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith. *Dick v. Peoples Mid-Illinois Corp.*, 242 Ill. App. 3d 297 (1993). Further, a trustee owes a fiduciary duty to serve the interest of the beneficiaries with total loyalty, excluding all self-interest, and is prohibited from dealing with the trust's property for her individual benefit. *Dick*, 242 Ill. App. 3d at 303-04.

As noted above, the trial court relied principally upon *Bracken v. Block*, 204 Ill. App. 3d 23 (1990), in concluding that the amended complaint did not state a cause of action.

In *Bracken*, John and Alice Leahy, brother and sister, lived together and held all their property in common. *Bracken*, 204 Ill. App. 3d at 25. John died in 1968, leaving all his property in trust to Alice as trustee for the benefit of the same Alice Leahy. *Bracken*, 204 Ill. App. 3d at 25. John's will provided that the trustee was to pay all the trust's income to Alice as long as she lived. *Bracken*, 204 Ill. App. 3d at 25. The will specifically stated:

> " 'The Trustee shall also pay to my said sister as much of the principal of my Trust Estate as she in her sole judgment deems necessary or advisable to assure her care, comfort, support, maintenance and medical attention.' " *Bracken*, 204 Ill. App. 3d at 25.

The will granted the trustee broad powers to deal with the trust property. Further, the will provided that, at Alice's death, the principal of the trust was to be distributed to assorted charitable organizations, with the exception that John's one-half interest in the Leahy home was to go to plaintiff, Urban Bracken. *Bracken*, 204 Ill. App. 3d at 25. Alice owned the other one-half of the interest in the house, which was to pass to the beneficiaries of her will, Dr. George Block and Mary Block. *Bracken*, 204 Ill. App. 3d at 25. In the 1970s, Alice's income from the trust's assets was insufficient for her support

and care. *Bracken*, 204 Ill. App. 3d at 25. In her capacity as trustee, Alice sold the undivided one-half interest in the subject home to herself individually for one-half the appraised value of the home, $17,500. *Bracken*, 204 Ill. App. 3d at 25. The sale's proceeds were put into the trust and used for Alice's benefit. *Bracken*, 204 Ill. App. 3d at 25. Upon Alice's death in 1987, the house was sold for $70,000.

Before the trial court, Bracken argued that, as a holder of the remainder interest under John's will, he was entitled to one-half of the proceeds of the house's sale. The trial court granted defendant's motion for summary judgment.

The *Bracken* court concluded that Alice's sale of the trust's one-half interest in the house to herself was a proper exercise of her discretion as trustee under John's will. Accordingly, it affirmed the trial court's granting of defendant's motion for summary judgment.

In so holding, the *Bracken* court found applicable the exception to the general rule that a trustee may not put herself in a position where her interests may conflict with the interests of the trust property. This exception applies when the trust instrument contemplates, creates, and expressly sanctions the conflict of interest.

The *Bracken* court stated:

> "John Leahy made his sister Alice both trustee and the primary beneficiary of the trust, and as trustee she was given broad powers to invade the principal, to sell the trust property, and to do all other acts as she judged necessary or desirable to carry out the purposes of the trust. When the only asset remaining in the trust was a one-half interest in the home where Alice resided, the sale of that interest was judged necessary in order to apply the proceeds to the trust purpose, *i.e.*, to pay the living expenses of Alice." *Bracken*, 204 Ill. App. 3d at 26.

Bracken contended on appeal that Alice could have left the real property in the trust and continued to live in the home instead of selling it to herself. *Bracken*, 204 Ill. App. 3d at 26. The *Bracken* court conceded that Bracken's point was valid. However, the *Bracken* court concluded that Alice's decision, under the circumstances, was equally valid.

Bracken further argued that John's will did not directly authorize Alice to engage in self-dealing to the detriment of a beneficiary of the trust. The *Bracken* court noted that John's will evidenced his primary intent to provide for Alice's support. It further noted that the evidence showed that trust income was used by Alice for her support, rather than her own property. The *Bracken* court concluded that Alice was not required to consume her own assets prior to exercising her power to invade the trust's principal and that her sale

of the trust's one-half interest in the subject home was a proper exercise of her discretion as trustee under John's will.

The factual scenario presented in *Bracken* bears little resemblance to that found in the instant appeal. For example, Bracken asserted that Alice had engaged in improper self-dealing. In the case before us, there is no such allegation that Joan acted improperly in her own self-interest. Further, unlike the appeal at bar, *Bracken* did not involve the sale of trust property to only one of the contingent beneficiaries. Nor did *Bracken* involve allegations of actions taken by the trustee that left the interests of certain contingent beneficiaries unprotected.

As noted above, *Bracken* stands, in part, for the proposition that where the trust instrument contemplates, creates, and expressly sanctions conflicts of interest between the trustee's interests and those of the trust property the conflict may be allowed to exist. Assuming *arguendo* that the allegations of the subject amended complaint involve any such conflicts of interest between Joan's interests and those of the Trust's property, the trial court properly relied on *Bracken*.

However, as indicated above, the primary thrust of the amended complaint deals with allegations that Joan's decision to sell the Alu-Bra shares to John violated the prudent investor rule and left the other contingent beneficiaries without adequate protection should John default on the Agreement. *Bracken* did not involve such issues and, thus, is not controlling in regard to them.

■ Accordingly, we find no basis to support the trial court's conclusion that the amended complaint does not set forth sufficient allegations to state a cause of action regarding a number of Pamela's contentions. For example, Pamela alleges that Joan failed to exercise reasonable business acumen in selling the Alu-Bra shares and also that Joan violated the prudent investor rule in making the sale. Specifically, she avers that the sale price of $400,000 is substantially less than the appraised value of the Alu-Bra stock and that the land and stock owned by Alu-Bra was estimated at between $665,000 and $790,000.

Moreover, Pamela alleges that the Note does not allow for the recovery of the stock if James becomes insolvent and that the life insurance policies taken out by James to secure the purchase of Alu-Bra stock name James as the beneficiary and, thus, does not provide adequate security for the beneficiaries of the Trust.

Taking these well-pleaded facts as true for purposes of this appeal and interpreting them in the light most favorable to Pamela, we find they set forth a cause of action against the defendants based

upon (1) Joan's failure to exercise reasonable business acumen in selling the Trust's corpus to James; and (2) a violation of the prudent investor rule, which provides in pertinent part:

"A trustee administering a trust has a duty to invest and manage the trust assets as follows:

(1) The trustee has a duty to invest and manage trust assets as a prudent investor would considering the purposes, terms, distribution requirements, and other circumstances of the trust. This standard requires the exercise of reasonable care, skill, and caution and is to be applied to investments not in isolation, but in the context of the trust portfolio as a whole and as a part of an overall investment strategy that should incorporate risk and return objectives reasonably suitable to the trust.

(2) No specific investment or course of action is, taken alone, prudent or imprudent. The trustee may invest in every kind of property and type of investment, subject to this Section. The trustee's investment decisions and actions are to be judged in terms of the trustee's reasonable business judgment regarding the anticipated effect on the trust portfolio as a whole under the facts and circumstances prevailing at the time of the decision or action. The prudent investor rule is a test of conduct and not of resulting performance." 760 ILCS 5/5(a)(1), (a)(2) (West 1994).

Also, Pamela avers that the subject sale of shares represents the breach of Joan's obligation to act impartially toward all beneficiaries. Specifically, she alleges that, in addition to the unreasonably low purchase price, James was permitted to make the purchase of the entire corpus of the Trust with no money down and that he is only required to make interest payments until February 22, 2025, at which time the full payment was due. On their face, these facts indicate a possible failure of Joan to act impartially towards all of the Trust's beneficiaries.

Finally, Pamela alleges that Joan improperly engaged in a familial conflict of interest. Specifically, her amended complaint avers that "[Joan] will be required, on a continuing basis to supervise, monitor, and collect under the stock purchase agreement and as such [is] in conflict due to the familial relationship." Of those issues that Pamela argues are raised in the amended complaint, this is the least "fleshed out." On its own, this allegation would probably not be sufficient to withstand a section 2—615 motion. However, in this context, in which we have determined there are a number of substantiated causes of action, this allegation of Joan's engaging in a familial conflict of interest is sufficient.

329

The amended complaint has raised serious and, as of yet, unanswered questions with respect to the sale of the Trust's corpus to James. Clearly, it is erroneous to terminate the litigation at this stage of the proceedings.

The judgment of the circuit court of Du Page County is reversed, and this cause is remanded for proceedings consistent with this opinion.

Reversed and remanded with directions.

DOYLE and HUTCHINSON, JJ., concur.